UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:11-CV-57

| | | |
|---|---|---|
| KATHRYN JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND ORDER** |
| | ) | |
| THE STATE OF NORTH CAROLINA | ) | |
| and KEITH WHITENER, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

 **THIS MATTER** is before the Court on Defendant North Carolina's Partial Motion to Dismiss

and accompanying Memorandum, filed March 27, 2012, and Defendant Keith Whitener's

Motion to Dismiss and accompanying Memorandum, filed May 11, 2012 (Docs. 15, 16, 22 and

23); Plaintiff's Memoranda in Opposition, filed June 25, 2012 (Docs. 30 and 31); and

Defendants' Replies to Plaintiff's Responses, filed July 5, 2012 (Docs. 33 and 34).   This matter

is ripe for disposition.

## I. Factual and Procedural History

Plaintiff, Kathryn Johnson, a former employee with the North Carolina Department of

Public Safety (hereinafter DPS), seeks declaratory, injunctive, and equitable relief; liquidated,

compensatory, and punitive damages; costs; and attorneys fees from Defendants State of North

Carolina and Keith Whitener.   Plaintiff's complaint alleges (a) retaliation for filing two

complaints with the United States Equal Employment Opportunity Commission (hereinafter

EEOC), (b) the creation of a hostile work environment, (c) wrongful termination, and (d) breach

of contact.

1

Plaintiff bases her claims upon (a) Title VII of the Civil Rights Act of 1964, (b) the Fair Labor Standards Act, (c) the Employment Retirement Income Security Act, (d) the North Carolina Equal Employment Practices Act, (e) the North Carolina Retaliatory Employment Discrimination Act, and (f) the common law of North Carolina.

The facts, as recited in the complaint, are as follows. In October 2007, Plaintiff entered into an employment contract to serve as a correctional officer with DPS. (Doc. 1 at p. 2). Plaintiff was originally assigned to work at the Alexander Correctional Institution in Alexander County, North Carolina, where Defendant Whitener worked as a supervisor. (Doc. 1 at p. 2).

On or about October 12, 2009, Plaintiff received "one minor write up," but otherwise maintained a "good record with Defendant State of North Carolina." (Doc. 1 at p. 2). Around this time, Plaintiff filed a sexual harassment complaint with DPS against Sergeant Llyod Hames, one of her supervisors at the Alexander Correctional Institution. (Doc. 1 at p. 2; Exhibit 3 at p. 3).[1]

On or about December 29, 2009, Plaintiff filed a complaint with the EEOC (EEOC file number 435-2010-00191) alleging (a) sexual harassment by a supervisor at the Alexander Correctional Institution, (b) the creation of a hostile work environment after filing a complaint (c) retaliation for filing a sexual harassment complaint, and (d) unwarranted demotion. (Doc. 1 at p. 2).

Plaintiff did not pursue her EEOC claim due to insufficient funds; however, after filing her claim and until her eventual termination on February 3, 2011, Plaintiff alleges a constant "course of action in retaliation" by Defendants State of North Carolina and Whitener. (Doc. 1 at p. 2).

---

[1] In her complaint, Plaintiff indicates that she filed her complaint with DPS on December 4, 2009, yet in an incorporated exhibit, Plaintiff states that she filed her complaint on September 19, 2009. (Doc. 1 at p. 2; Exhibit 3 at p. 3).

Specifically, Plaintiff alleges that Defendants State of North Carolina and Whitener, without just cause, encouraged Shana Thompson, an employee at the Alexander Correctional Institution, to "make a series of false complaints against the Plaintiff." (Doc. 1 at p. 3). The first complaint occurred on or about September 27, 2010, when Thompson filed a written complaint with DPS alleging that Plaintiff had cursed at her several times. (Exhibit 3 at p. 2). Plaintiff denied these allegations and provided her own written statement to DPS.[2] (Exhibit 3 at p. 2). The second complaint, filed on or about September 28, 2010, alleged that Plaintiff had committed assault and battery against Thompson at the Alexander Correctional Institution on September 28, 2010.[3] (Doc. 1 at p. 3).

Plaintiff further alleges that other unnamed personnel employed by the State of North Carolina encouraged Thompson to initiate civil proceedings against Plaintiff regarding the alleged September 28 assault and battery.[4] (Doc. 1 at p. 3). Thompson filed a Complaint for a No-Contact Order on September 29, 2010, with the Alexander County District Court, and the Court issued a Temporary No-Contact Order, which prohibited Plaintiff from having any contact with Thompson, including at work. (Doc. 1 at p. 3; Exhibit 2).

[2] While Plaintiff admitted to using disparaging language to describe Thompson's attitude, Plaintiff also indicated that between September 9, 2010, and September 28, 2010, there was a series of exchanges in which Thompson and Plaintiff communicated with each other in a terse or threatening manner. (Exhibit 3). Plaintiff alleges that on several occasions Thompson laughed at her or in her face and made threatening remarks about Plaintiff to coworkers. (Exhibit 3 at p. 1).

[3] In her Complaint for a No-Contact Order, Thompson alleges that on September 28, 2010, Plaintiff "made physical contact with [her] by means of the left side of her body." (Exhibit 2). Plaintiff alleges that physical contact resulted when the two women passed each other on the sidewalk and the "material on the sleeves of [their] uniforms touched." (Exhibit 3 at p. 4).

[4] On or about November 16, 2010, approximately six weeks after Plaintiff was transferred to the Catawba County Correctional Institution, Thompson gave notice of voluntary dismissal of the Temporary No-Contact Order. (Exhibit 2). Plaintiff then initiated a separate civil proceeding against Thompson alleging malicious prosecution. (Doc. 1 at p. 3).

3

Shortly thereafter, on or about October 1, 2010, Defendant Whitener called Plaintiff into his office. (Exhibit 3 at p. 4). At this time Whitener indicated that he was aware of the alleged assault and battery, Thompson's written statement regarding the incident, and the recently issued restraining order. (Exhibit 3 at p. 4). Whitener informed Plaintiff that he was giving her an administrative reassignment to the Catawba Correctional Institution, a facility that is also run by the State of North Carolina, effective immediately. (Exhibit 3 at p. 4).

As a result of the transfer, Plaintiff began reporting to the Catawba Correctional Institution, located in Catawba County, North Carolina. (Doc. 1 at p. 3). The transfer caused "an increase in daily commuting mileage . . . of approximately 30 miles per day," which resulted in a "considerable increase in the Plaintiff's expenses in traveling to and from work." (Doc. 1 at p. 3). Plaintiff also alleges that at an unidentified time she was wrongfully demoted, which ultimately lead to a loss in pay, retirement benefits, and medical insurance coverage. (Doc. 1 at p. 4).

At a likewise unidentified time, but prior to January 24, 2011, Plaintiff filed a second EEOC claim (EEOC file number 430-2011-00756). (Doc. 1 at p. 4). This claim was dismissed for failing to "state a claim under any of the statutes enforced by the EEOC" on January 24, 2011, and Plaintiff received her right-to-sue letter from the EEOC permitting her to initiate the present case. (Exhibit 1). While Plaintiff references her second EEOC claim in her Complaint, she has not provided the court with a copy of the claim, nor has she described the content of the claim.

On February 3, 2011, approximately three months after her transfer to Catawba Correctional Institution, Plaintiff's employment with DPS was terminated. (Doc. 1 at p. 4). Plaintiff alleges that this termination was carried out wrongfully, without sufficient cause, and in

violation of her employment contract. (Doc. 1 at p. 4). Plaintiff further alleges that the termination was in retaliation for filing of EEOC complaints 435-2010-00191 and 430-2011-00756. (Doc. 1 at p. 4). As a result of her termination, Plaintiff was deprived of her "base compensation, medical benefits, and retirement benefits." (Doc. 1 at p. 4).

Due to the aforementioned conduct, Plaintiff initiated this suit with the Western District of North Carolina on April 25, 2011. Defendants moved to dismiss the claims on March 27, 2012 and May 11, 2012.

## II. Standard of Review

Defendants have moved for dismissal of all claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Citing North Carolina's invocation of its Eleventh Amendment sovereign immunity, Defendants have also moved for dismissal of Plaintiff's state-law claims pursuant to Rules 12(b)(1) and 12(b)(2).

Rule 12(b)(6) provides for the dismissal of a claim based upon a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a)(2). In evaluating motions to dismiss, the court must construe the complaint's factual allegations "in the light most favorable to the plaintiff" and "must accept as true all well-pleaded allegations." *Randall v. U.S.,* 30 F.3d 518, 522 (4th Cir. 1994). The court, however, need not "accept the legal conclusions drawn from the facts," nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)).

While Rule 8(a)(2) does not require "detailed factual allegations," a complaint must offer

5

more than "naked assertion[s]" and unadorned "labels and conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In order to survive a Rule 12(b)(6) motion to dismiss, the facts alleged must be sufficient to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Requiring plausibility "does not impose a probability requirement at the pleading stage." *Twombly*, 550 U.S. at 556. It does, however, demand more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 662. Ultimately, a claim has facial plausibility when the plaintiff pleads factual content that permits the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

Rules 12(b)(1) and 12(b)(2) provide for dismissal of claims for lack of subject-matter jurisdiction and lack of personal jurisdiction, respectively. Pursuant to Rule 12(b)(2), plaintiffs bear the burden of setting forth facts sufficient to demonstrate personal jurisdiction. *Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56, 59–60 (4th Cir. 1993). Plaintiffs, however need only prove a *prima facie* case of personal jurisdiction, with the court drawing all reasonable inferences arising from the proof and resolving all factual disputes in plaintiff's favor. *Id.*

The existence of subject matter jurisdiction is a threshold issue the court must address before considering the merits of the case. *Jones v. Am. Postal Workers Union,* 192 F.3d 417, 422 (4th Cir. 1999). The plaintiff bears the burden of proof in Rule 12(b)(1) motions, and the court should grant dismissal "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

There are two distinct ways to present Rule 12(b)(1) motions. The first is to contend that

"the jurisdictional allegations of the complaint were not true." *Id*. In such a situation, "a trial court may then go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations." *Id*. The second approach, and the one taken by Defendants in the instant case, is to contend that a complaint "simply fails to allege facts upon which subject matter jurisdiction can be based." *Id.* In this event, "all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under Rule 12(b)(6) consideration." *Id*. The 12(b)(1) motion must be denied if the complaint alleges "sufficient facts to invoke subject matter jurisdiction." *Kerns v. U.S.*, 585 F.3d 187, 192 (4th Cir. 2009).

While the Defendants seek dismissal under both Rules 12(b)(1) and 12(b)(2), the motions to dismiss are, in essence, a jurisdictional challenge based on Defendant North Carolina's invocation of its Eleventh Amendment sovereign immunity. In the Fourth Circuit and elsewhere, there is authority suggesting that motions to dismiss based upon sovereign immunity may be properly granted pursuant to Rule 12(b)(1) as opposed to 12(b)(2). *See Abril v. Virginia*, 145 F.3d 182, 184 (4th Cir. 1998); *Republic of Paraguay v. Allen*, 134 F.3d 622, 626 (4th Cir. 1998), *cert. denied*, 523 U.S. 371 (1998); *Abdus-Salaam v. Bill Maddalon Unique Southern Estates*, No. 3:11cv410, 2012 WL 1569584, at *4 (W.D.N.C. May 3, 2012); *Wood v. Milyard*, 414 Fed. Appx. 103, 105 (10th Cir. Jan. 13, 2011) (*unpublished*) (citing *Edelman v. Jordan*, 415 U.S. 651, 678 (1974)) (noting "[s]tate sovereign immunity is more than immunity from liability—it actually deprives federal courts of subject-matter jurisdiction."). This court, therefore, will evaluate Defendants' sovereign immunity defenses pursuant to the framework established in Rule 12(b)(1).

### III. Analysis

### A. Federal Claims

#### 1. Title VII of the Civil Rights Act of 1964 a.

#### State of North Carolina

Defendant State of North Carolina has not moved to dismiss Plaintiff's Title VII claims; it does, however, move to dismiss any Title VII punitive damages claims pursuant to Rule 12(b)(6). 42 U.S.C. § 1981a(a)(1) allows complaining parties to recover compensatory and punitive damages for Title VII violations. *Penn. State Police v. Suders*, 542 U.S. 129, 147 (2004). The statute, however, states that:

> A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

42 U.S.C. § 1981a(b)(1). The statute, then, makes it clear that "punitive damages under Title VII are not available against the State." *Hooper v. N.C.,* 379 F.Supp.2d 804, 811 (M.D.N.C. 2005). Therefore, without considering the merits of Plaintiff's underlying Title VII claims, this court dismisses Plaintiff's Title VII punitive damages claim pursuant to Rule 12(b)(6).

#### b. Defendant Whitener

Defendant Whitener moves to dismiss Plaintiff's Title VII claims pursuant to Rule 12(b)(6). The Fourth Circuit has clearly held that supervisors, such as Whitener, are not liable "in their individual capacities for Title VII violations." *Lissau v. Southern Food Serv*., 159 F.3d 177, 180-81 (4th Cir. 1998). In the instant case, Plaintiff does not state whether she is suing Whitener in his official or individual capacity; however, under either theory of liability, Plaintiff's claim is barred.

The primary difference between individual-capacity and official-capacity suits is the nature of the relief sought. *See Kentucky v. Graham*, U.S. 159, 66 (1985). Individual capacity suits "seek to impose personal liability upon a government official for actions he takes under color of state law," whereas official-liability suits seek to recover from the government agency itself. *Id*. at 165. In this case, Plaintiff is likely bringing an individual-capacity suit as her Complaint stated several times that she is suing Whitener "jointly and severally" with the State of North Carolina. Doc. 1 at p. 5. This joint and several language indicates that Plaintiff is suing Whitener pursuing two separate sources of money damages: the first from North Carolina's state treasury and the second from Whitener's personal assets. Therefore, to the extent that Plaintiff is suing Whitener in his individual capacity, her Title VII claim is barred pursuant to *Lissau v. Southern Good Services* and dismissed pursuant to Rule 12(b)(6).

Assuming *arguendo* that Plaintiff is attempting to sue Whitener in his official capacity, this claim will nonetheless fail. As previously mentioned, official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 at 165-66 (internal citations removed). Thus, in official-capacity suits, the "real party in interest" is not the named official, but the entity that employs him; and the damages sought to be recovered will not come from the pockets of the named official, but rather from the treasury of the entity that employs him. *Id*. at 166.

In the instant case, however, Plaintiff named not only Whitener, but also the State of North Carolina as defendants in her suit. Suing Whitener in his official capacity, then, would ultimately fail as such a claim would be wholly duplicative of Plaintiff's suit against the State of North Carolina and the practical equivalent of suing the State of North Carolina twice in the same action. *Love–Lane v. Martin,* 355 F.3d 766, 783 (4th Cir. 2004); *Shaeffer v. County of*

9

*Chatham,* 337 F.Supp.2d 709, 721 (M.D.N.C. 2004); *Monsul v. Ohashi Technica U.S.A., Inc.,* No. 2:08-cv-958, 2009 WL 2430959 (S.D. Ohio Aug. 6, 2009) *(unpublished)* (dismissing Title VII official capacity claims against supervisors as redundant of claims against employer).

In order to avoid such duplicative results, the proper method for a plaintiff to recover under a Title VII official-capacity suit is by suing the employer, "either by naming the supervisory employees as agents of the employer *or* by naming the employer directly." *Haynes v. Williams,* 88 F.3d 898 (10th Cir. 1996) (emphasis added); *see also Indest v. Freeman Decorating, Inc.,* 164 F.3d 258, 262 (5th Cir. 1999). In other words, the employer is the proper party defendant. Because Plaintiff has already asserted a claim against her employer, Defendant State of North Carolina, to the extent that she is suing Whitener in his official capacity, her claim is barred as redundant.

### 2. The Fair Labor Standards Act of 1938 (FLSA)

Defendants move to dismiss Plaintiffs FLSA claim pursuant to Rule 12(b)(6). Congress enacted the FLSA in 1938, primarily as a means to impose upon employers an overtime pay rate, a federal minimum wage, and a maximum hours requirement; the intended purpose of the act being the protection of workers from "substandard wages and oppressive working hours." *Christopher v. SmithKline Beecham Corp.,* 132 S.Ct. 2156, 2161-62 (2012) (citing *Barrentine v. Arkansas-Best Freight Sys., Inc.,* 450 U.S. 728, 739 (1981)).

In the complaint at bar, Plaintiff has not alleged that she was denied minimum wage or overtime pay, nor that she was improperly compensated or otherwise denied compensation for her labor. While Plaintiff does claim that she was wrongfully demoted and terminated in retaliation for filing two EEOC complaints, such claims are improperly placed under the FLSA. Doc. 1 at p. 4.

The FLSA does contain an anti-retaliation provision; however, it is limited in scope. In relevant part, the provision renders it unlawful for an employer to:

> Discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding *under or related to this chapter*, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

29 U.S.C. § 215(a)(3) (emphasis added).

Thus, to assert a *prima facie* claim of retaliation under the FLSA, a plaintiff must show: "(1) he engaged in an activity protected by the FLSA; (2) he suffered adverse action by the employer subsequent to or contemporaneous with such protected activity; and (3) a causal connection exists between the employee's activity and the employer's adverse action." *Darveau v. Detecon, Inc.*, 515 F.3d 334, 340 (4th Cir. 2008).

In this case, Plaintiff has failed to allege that she was engaged in an activity protected by the FLSA. She never alleges that she was fired for initiating an FLSA-related claim or testifying in an FLSA-related proceeding. As admitted by Plaintiff, her EEOC complaints did not relate to FLSA provisions, but rather concerned her alleged sexual harassment and subsequent retaliatory actions allegedly taken by Defendants. Therefore, due to a lack of factual support, Plaintiff's FLSA claims are dismissed pursuant to Rule 12(b)(6).

### 3. The Employment Retirement Income Security Act

Defendants move to dismiss Plaintiff's ERISA claim pursuant to Rule 12(b)(6). Congress enacted ERISA as a comprehensive statute that would "promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90 (1983); 29 U.S.C. § 1001(b) and (c). It is important to point out that ERISA was enacted in large part to protect employees in the private, as opposed to the public, sector. The

Act specifically excludes "governmental plans," or those plans that are "established and maintained . . . by the government of any State or political subdivision thereof or by any agency or instrumentality of the foregoing." 29 U.S.C. § 1002(32); 29 U.S.C. § 1003(b)(1).

Relevant to Plaintiff's case, section 510 of the Act renders it unlawful to "discharge . . . or discriminate against a participant . . . for exercising any right to which he is entitled under [ERISA] . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled." 29 U.S.C. § 1140.

To establish a prima facie case under Section 510, a plaintiff must show "(1) that he is a member of the protected class, *i.e.,* a participant in an employee benefit plan; (2) that he was qualified for the job; and (3) that he was discharged 'under circumstances that give rise to an inference of discrimination.'" *Blair v. Young Philips Corp.*, 235 F.Supp.2d 465, 473 (M.D.N.C. 2002) (citing *Henson v. Liggett Group, Inc.,* 61 F.3d 270, 277 (4th Cir. 1995)).

In the instant case, Plaintiff has failed to allege even the existence of an ERISA plan, let alone offer a claim that she was a participant in the plan. She has not claimed that she was exercising an ERISA right prior to her termination or that she was discriminated against for exercising such a right or for the purpose of interfering with the attainment of such a right.[5] As a result, it is inappropriate for Plaintiff to seek relief under ERISA on these facts, and the claim is dismissed pursuant to Rule 12(b)(6).

## B. State Claims

---

[5] Plaintiff makes a claim that she because of her termination, she lost the opportunity to accrue additional benefits (Doc. 1 at p. 5); however, as noted by the Fourth Circuit in *Conkwright v. Westinghouse*, "it is not sufficient for an employee to allege lost opportunity to accrue additional benefits as evidence of the employer's specific intent to violate ERISA; rather, a plaintiff must adduce facts, which if taken as true, could enable a jury to identify unlawful intent from the other various reasons why an employer might have terminated plaintiff, and to conclude that the employer harbored the requisite unlawful intent." 933 F.2d 231, 239 (4th Cir. 1991).

Plaintiff brings three claims based on state law. While this order will consider whether each of these complaints states a valid claim for relief, it is first necessary to consider the implications of North Carolina's invocation of sovereign immunity.

### 1. Sovereign Immunity

#### a. State of North Carolina

Defendants State of North Carolina and Keith Whitener both claim Eleventh Amendment protection from Plaintiff's state-law claims. While the Eleventh Amendment by its terms does not bar suits against a State by its own citizens, the Supreme Court has consistently held that an "unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).

Despite the Court's broad declarations of immunity, an unconsenting state may nonetheless be sued in federal court under certain narrow circumstances. First, Congress may abrogate state immunity when enacting legislation pursuant to section 5 of the Fourteenth Amendment. *Hopper v. North Carolina*, 379 F.Supp.2d 804, 812 (2005) (citing *Fitzpatrick v. Bitzer,* 427 U.S. 445, 456 (1976)). Second, a state may explicitly waive its immunity "by the most express language, or by such overwhelming implication from the text as would leave no room for any other reasonable construction." *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171 (1909).

In the instant complaint, Plaintiff raises no claims of congressional abrogation, and while Plaintiff contends that North Carolina waived its sovereign immunity pursuant to the State Employee Federal Remedy Restoration Act, this is an incorrect statement of the law. Doc. 1 at p. 1. In relevant part, the Act, codified in N.C. Gen. Stat. § 143-300.35, waives only sovereign

immunity under the FLSA.[6]   The absence of waiver or congressional abrogation is decisive here, and Plaintiff's state-law claims against North Carolina are thus barred by the Eleventh Amendment.

### b. Whitener

As previously noted, an individual state employee may be sued in either his official or individual capacity.   The distinction between individual-capacity and official-capacity suits is important as official-capacity claims are barred by the Eleventh Amendment, whereas individual capacity claims are not.   *Ford Motor Co. v Department of the Treasury*, 323 U.S. 459, 464 (1945); *Meyer v. Wall*, 489 S.E.2d 880, 887 (N.C. 1997).   Because Plaintiff does not specify the capacity in which she is bringing suit against Whitener, this court will consider whether Plaintiff's claims can stand against Whitener in either his official or individual capacity.[7]

As previously established, pursuant to *Ford Motor Co*., to the extent that Plaintiff raises an official-capacity claim, the claim is barred by the Eleventh Amendment.   *Id.*; *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).   And while the Eleventh Amendment permits suits against government officials in their individual capacity, to the extent that Whitener is sued in such a capacity, Plaintiff's claims will nonetheless be barred as the Eleventh Amendment prevents federal supplemental jurisdiction over claims that allege "state officials violated state law in

[6]
N.C. Gen. Stat. § 143-300.35(a): The sovereign immunity of the State is waived for the limited purpose of allowing State employees, except   for those in exempt policy-making positions designated pursuant to G.S. 126-5(d), to maintain lawsuits in State and federal courts and obtain and satisfy judgments against the State or any of its departments, institutions, or agencies under:
The Fair Labor Standards Act, 29 U.S.C. § 201, et seq.
The Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq.
The Family and Medical Leave Act, 29 U.S.C. § 2601, et seq.
The Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.

[7]
As previously noted, it is likely that Plaintiff is attempting to sue Whitener in his individual capacity as her complaint states that she is suing him jointly and severally with the State of North Carolina.

carrying out their official responsibilities." *Pennhurst State School & Hosp. v. Halderma*n, 465 U.S. 89, 121 (1984). Because each of Plaintiff's remaining claims alleges violations of state law, Plaintiff's claims are improperly placed in federal court.

As a result of this Eleventh Amendment analysis, all of Plaintiff's state-law claims, discussed *infra*, are barred pursuant to the Eleventh Amendment and Rule 12(b)(1). As an alternative ground for dismissal, however, the court will also consider whether Defendant's motions for dismissal may be granted pursuant to Rule 12(b)(6).

### 2. The North Carolina Equal Employment Practices Act

Defendants move to dismiss Plaintiff's NCEEPA claim pursuant to Rule 12(b)(1), 12(b)(2) and 12(b)(6). The NCEEPA states that "[i]t is the public policy of [North Carolina] to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees." N.C. Gen. Stat. § 143-422.2.

While the NCEEPA "clearly pronounces the State's public policy," the Act itself amounts to little more than a declarative policy statement that affords plaintiffs no statutory remedies or private causes of action for its violation. *Strickland v. Jewell,* 562 F.Supp.2d 661, 674 (M.D.N.C.2007); *see also Bendross v. Town of Huntersville,* 582 S.E.2d 726 at *3 (Table) (N.C. App. 2003). As such, "[a]bsent a clear indication from the North Carolina courts or legislature, it would be inappropriate for a federal court to create a private right of action under the NCEEPA," and this court declines to do so. *Smith v. First Union Nat. Bank,* 202 F.3d 234, 247 (4th Cir. 2000). This court, therefore, dismisses Plaintiff's NCEEPA claim pursuant to Rule 12(b)(6), and in the alternative pursuant to Rule 12(b)(1).

15

### 3.  Common Law of North Carolina

While the NCEEPA does not create a private right of action, the Fourth Circuit has held

that the Act may be applied pursuant to "common law . . . claims or in connection with other

specific statutory remedies."  *Hughes v. Bedsole*, 48 F.3d 1376, 1383 n.6 (4th Cir. 1995)).     As

such, this court will consider whether there is a common law or statutory basis for each of

Plaintiff's claims, considered *infra*.

#### a.  Wrongful Discharge

##### i.  North Carolina

North Carolina is an at-will-employment state, meaning that as a general rule, "the

employment relationship is presumed to be terminable at the will of either party at any time and

without reason."  *E.E.O.C. v. Safelite Glass Corp.*, 2012 WL 3266333, at *14 (E.D.N.C. Aug. 9,

2012).   The North Carolina Supreme Court, however, has recognized a limited public policy

exception to this doctrine; namely, that there is no right to terminate an employment contract "for

an unlawful reason or a purpose that contravenes public policy." *Id*. (quoting *Coman v. Thomas

Mfg. Co.*, 381 S.E.2d 445, 447 (N.C. 1989)).

The North Carolina Supreme Court has generally defined public policy as "the principle of

law which holds that no citizen can lawfully do that which has a tendency to be injurious to the

public or against the public good."  *Coman,* 381 S.E.2d at 447 n2.   Despite this seemingly broad

interpretation of public policy, North Carolina courts have consistently held that "[t]he public

policy exception to the employment-at-will doctrine is a narrow exception."  *DeWitt v.

Mecklenburg County*, 73 F.Supp.2d 589, 604 (W.D.N.C. 1999); *Roberts v. First-Citizens Bank*,

478 S.E.2d 809, 814, *app. withdrawn* 487 S.E.2d 758 (1997).   In 1992, the North Carolina

Supreme Court held that "at the very least public policy is violated when an employee is fired in

contravention of express policy declarations contained in the North Carolina General Statutes." *Amos v. Oakdale Knitting Co.*, 416 S.E.2d 166, 169 (N.C. 1992).

Utilizing this precedent, the Fourth Circuit and the North Carolina Court of Appeals have likewise adopted a narrow interpretation of the public policy exception, holding that in order for a plaintiff to recover for wrongful discharge, he should "allege that the 'defendant's conduct violated [an] explicit statutory or constitutional provision, [or] allege defendant encouraged plaintiff to violate [a] law that might result in potential harm to the public.'" *Jefferson v. Viogen Idec Inc.,* No. 5:11–CV–237–F, 2012 WL 3629219 (E.D.N.C. Aug. 22, 2012) (citing *Considine v. Compass Group USA, Inc.*, 551 S.E.2d 179, 184 (N.C. App. 2001)).

Despite the mandate requiring plaintiffs to find a statutory or constitutional basis for their wrongful discharge claims, North Carolina courts have held that no such statutory or constitutional basis exists for claims similar to those alleged by Plaintiff. *See Mullis v. Mechanics & Farmers Bank*, 994 F.Supp. 680, 688 (M.D.N.C. 1997) (noting that a claim for wrongful discharge pursuant to North Carolina's common law public policy exception "must fail because there is no North Carolina state law support for . . . assertion[s] that a retaliatory discharge arising from complaints of sexual harassment violates the public policy of North Carolina;" *see also Safari v. Cooper Wiring Devises, Inc.*, No. 3:11–cv–12–RJC–DSC, 2012 WL 1247149, at *4 (W.D.N.C. Apr. 13, 2012) (noting that "North Carolina law does not recognize a [retaliatory discharge] claim"); *Lowe v. Unifi, Inc.,* 292 F.Supp.2d 773, 790 (M.D.N.C. 2003) (noting that "North Carolina does not recognize tort claims under the NCEEPA for . . . wrongful discharge in retaliation for complaints of sexual harassment").[8]

---

[8] While *McLean v. Patten Communities, Inc.* held that "North Carolina law recognizes a cause of action for wrongful discharge where an employee is fired for refusing to consent to the sexual advances of the employer," this is not the factual situation in the present case.  332 F.3d 714, 720

Like the aforementioned courts, Plaintiff has failed to identify a single state statute or constitutional provision that provides a legal remedy for her alleged wrongful discharge; nor has she alleged how Defendants' actions were injurious to the public.   As such, this court dismisses Plaintiff's claims pursuant to Rule 12(b)(6).[9]

### ii.   Whitener

Pursuant to established North Carolina law, "a plaintiff may only bring a wrongful discharge action against the plaintiff's employer, not against the employer's agents (such as co-workers and supervisors)."   *Sampson v. Leonard*, No. 4:10-121, 2011 WL 129634, at *3 (E.D.N.C. Jan. 12, 2011) (*unpublished*); *Iglesias v. Wolford*, 539 F.Supp.2d 831, 839 (E.D.N.C. 2008); *Hooper*, 379 F.Supp.2d at 814; *Lorbacher v. Housing Authority of the City of Raleigh*, 493 S.E.2d 74, 79 (N.C. App. 1997) (noting that the trial court properly dismissed plaintiff's

(N.C. 2003). Plaintiff does not allege that she was fired for refusing to submit to her supervisor's sexual harassment, but rather because she filed two EEOC claims that alleged sexual harassment, among other complaints.   Doc. 1 at p. 1.

[9] It is worth noting that even if Plaintiff had alleged a statutory or constitutional basis for her wrongful discharge claims, Plaintiff's asserted factual allegations do not establish a *prima facie* case of wrongful termination under either Title VII or North Carolina state law as she was unable to establish a causal connection between the filing of her EEOC claims and her eventual termination.   *See Employment Sec. Comm'n of N.C. v. Peace*, 493 S.E.2d 466, 471 (N.C. App. 1997), *aff'd in part, appeal dismissed and disc. review allowed in part*, 507 S.E.2d 272 (N.C. 1998) (noting that "a prima facie showing of retaliatory discharge requires a plaintiff to show: (1) he engaged in some protected activity, such as filing an EEO complaint; (2) the employer took adverse employment action against plaintiff; and (3) that the protected conduct was a substantial or motivating factor in the adverse action (a causal connection existed between the protected activity and the adverse action).").   In the case at bar, Plaintiff alleges that she was terminated approximately 13 months after filing her initial EEOC complaint. Plaintiff does not provide a filing date for her second EEOC claim.   Furthermore, Plaintiff admits that prior to her transfer and termination, but after her initial EEOC filing, Shana Thompson filed two written complaints with DPS against her and obtained a temporary restraining order for an alleged on-the-job assault and battery. Viewing the facts as alleged by Plaintiff, the lack of temporal proximity between Plaintiff's initial EEOC filing and her eventual termination, the presence of alleged intervening misconduct, and a general lack of factual support for her allegations would permit this court to dismiss Plaintiff's wrongful discharge claim pursuant to Rule 12(b)(6).

18

wrongful discharge claims against his supervisors because "the individual defendants . . . were not plaintiff's employers for the purposes of a wrongful discharge claim").

### b.  Hostile work environment and retaliation

Neither retaliation nor hostile work environment claims are recognized under the common law of North Carolina.  *See McLean*, 332 F.3d at 719 (holding that retaliation is not a common law tort in North Carolina);  *Graham,* 465 S.E.2d 558, 560 (N.C. App. 1996) (noting that North Carolina has yet to adopt a claim in tort for a hostile work environment constructive wrongful discharge); *Jones v. Duke Energy Corp.,* 43 Fed. Appx. 599, 600 (4th Cir. Aug. 9, 2002) (*unpublished*) (holding that "North Carolina courts and federal courts applying North Carolina law have . . . repeatedly [found] that no private cause of action exists for retaliation, hostile work environment, disparate treatment, or constructive discharge in violation of public policy"); *Whitt v. Harris Teeter,* 598 S.E.2d 151 (2004), *rev'd and dissent adopted by* 614 S.E.2d 531 (2005) (noting that North Carolina courts have yet to adopt a hostile work environment constructive discharge claim).   Therefore, Plaintiff's claims are dismissed pursuant to Rule 12(b)(6).

### c.  Breach of Contract

Defendants move to dismiss Plaintiff's breach of contract claim pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6). To state a claim for breach of contract under North Carolina law, "the complaint must allege that a valid contract existed between the parties, that defendant breached the terms thereof, the facts constituting the breach, and that damages resulted from such breach."  *Capparelli v. AmeriFirst Home Imp. Finance Co*., 535 F.Supp.2d 554, 563 (E.D.N.C. 2008).

### i.  North Carolina

As previously noted, North Carolina is an at-will-employment state, meaning that, in the absence of a contrary provision, employment contracts are presumed to be terminable at any time and without any stated reason. *E.E.O.C. v. Safelite Glass Corp.,* 2012 WL 3266333, at *14.

In this case, Plaintiff has not provided a copy of her employment contract, nor has she alleged that the contents of her contract established a definite term of employment. While an employer may not fire an employee for an illegal reason, as discussed *supra*, Plaintiff has yet to establish any illegality resulting in her ultimate termination. As a result, Plaintiff's breach of contract claim may properly be dismissed pursuant to Rule 12(b)(6).

Furthermore, courts interpreting the Eleventh Amendment have specifically held government entities, and any government employees sued in their official capacity, are immune from breach of contract claims pursuant to the Eleventh Amendment. *See Peterson v. Davidson County Community College*, 367 F.Supp.2d 890, 893 (M.D.N.C. 2005); *Hooper,* 379 F.Supp.2d at 812.

### ii. Whitener

Notably, to establish a claim for breach of contract under North Carolina law, "the complaint must allege that a valid contract existed between the parties [to the case.]" *Capparelli,* 535 F.Supp.2d at 563. Furthermore, as noted in *Houpe v. City of Statesville*, a discharged employee may not sue his former supervisors for breach of contract when the complaint alleges that the plaintiff was hired by a government agency and not by an individual defendant. 497 S.E.2d 82, 89 (N.C. App. 1998).

In the instant complaint, Plaintiff states that her employment contract was with DPS. Doc. 1 at p. 4. She later states that contract was entered into with "Defendant State of North

Carolina." *Id.* at p. 5.   At no time does Plaintiff allege that Defendant Whitener was a party to the contract; therefore, this court dismisses Plaintiff's claim pursuant to Rule 12(b)(6).

### 4. The North Carolina Retaliatory Employment Discrimination Act (REDA)

Defendants move to dismiss Plaintiff's REDA claim pursuant to Rule 12(b)(1), 12(b)(2) and 12(b)(6).   The North Carolina legislature enacted REDA to "provide workers with a method to remedy unsafe and illegal working conditions without being punished by their employer." *Jurrissen v. Keystone Foods, LLC,* 2008 WL 3925086 at *4 (M.D.N.C. 2008) (citing *Brown v. Sears Auto. Ctr.,* 222 F. Supp.2d 757, 762 (M.D.N.C. 2002)).

In relevant part, REDA prohibits the discrimination and retaliation against an employee "because the employee in good faith does or threatens to . . . file a claim or complaint, initiate any inquiry, investigation, inspection, proceeding or other action, or testify or provide information to any person" with respect certain enumerated statutes, none of which Plaintiff cites in her complaint.[10]   N.C. Gen. Stat. § 95-241.

In order to bring a REDA claim an employee must follow certain procedural steps.   First, "an employee allegedly aggrieved by a violation of G.S. 95-241 may file a written complaint with the Commissioner of Labor alleging the violation."   N.C. Gen. Stat. § 95-242(a).    This complaint must be filed within 180 days of the violation.   *Id.* (noting that "[t]he complaint *shall* be filed within 180 days of the alleged violation)(emphasis added); *see also*, *Brackett v. SGL*

---

[10] REDA prohibits the retaliatory action against an employee for filing claims with respect to:
a. Chapter 97 of the General Statutes.
b. Article 2A or Article 16 of this Chapter.
c. Article 2A of Chapter 74 of the General Statutes.
d. G.S. 95-28.1.
e. Article 16 of Chapter 127A of the General Statutes.
f. G.S. 95-28.1A.
g. Article 52 of Chapter 143 of the General Statutes.
h. Article 5F of Chapter 90 of the General Statutes.

*Carbon Corp.,* 580 S.E.2d 757, 760 (2003) (holding that "the 180–day time limit for filing a REDA claim with the NCDOL is mandatory").

If, after investigation of the alleged violation, the Commissioner determines there is not "reasonable cause to believe the allegation is true, the Commissioner shall dismiss the complaint, promptly notify the employee and the respondent, and issue a right?to?sue letter to the employee that will enable the employee to bring a civil action pursuant to G.S. 95-243." *Id*.

Second, after being issued a right-to-sue letter, an employee "may commence a civil action in the superior court of the county where the violation occurred, where the complainant resides, or where the respondent resides or has his principal place of business." N.C. Gen. Stat. § 95-243(a). Such actions may only be commenced upon issuance of a right-to-sue letter, and must commence within 90 days of the issuance of the right-to-sue letter. N.C. Gen. Stat.§ 95-243(b) and (e).

Where it is undisputed that Plaintiffs have "never filed an administrative charge with the Department of Labor, their REDA claim and derivative public policy claim are barred." *Hurth v. Bradman Lake Group Ltd*., Not Reported in F.Supp.2d, 2009 WL 2497993, at *6 (W.D.N.C. 2009); *see also Satterwhite v. Wal-Mart Stores East, L.P*., No. 5:11–CV–363–BO, 2012 WL 255347, at *3 (E.D.N.C. Jan. 26, 2012) (stating that "[i]n order to bring a civil complaint under REDA, a plaintiff must first file a complaint with the North Carolina Department of Labor within 180 days of the alleged violation and receive a right-to-sue-letter.").

In this case, there is no claim that Plaintiff filed a complaint with the Labor Commissioner, obtained a right-to-sue letter, or filed a claim in superior court. Because Plaintiff does not maintain that she complied with the available administrative remedies, her claim is barred pursuant to Rule 12(b)(6).

### C.  Punitive Damages

Plaintiff first seeks to recover punitive damages pursuant to 42 U.S.C. § 1981a(a), which allows a complaining party to recover compensatory and punitive damages against a respondent who "engaged in unlawful intentional discrimination."  42 U.S.C. § 1981a(a)(1).  As it pertains to Defendant State of North Carolina, Plaintiff's reliance on § 1981a(a) is misplaced as the statute does not permit recovery against governments, government agencies, or political subdivisions.  42 U.S.C. § 1981a(b)(1).

As it pertains to Defendant Whitener, Plaintiff's claim likewise fails.  To recover punitive damages under 42 U.S.C. § 1981a, a complaining party must demonstrate "that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual."  *Id*.  Plaintiff has not sufficiently pleaded any such allegations.  As previously expounded upon, Plaintiff has not alleged enough facts to support a claim of wrongful discharge.  Moreover, Plaintiff's complaint is utterly devoid of information regarding her demotion.[11]  By her own account, Plaintiff was transferred after her supervisors learned that Shana Thompson had filed two written complaints against her and obtained a temporary restraining order, which prevented the two women from any contact, including at work.  Additionally, while Plaintiff claimed that Defendants encouraged Thompson to harass her, she has provided no factual support to augment that allegation; nor has Plaintiff even alleged that.  Defendants knew of Plaintiff's issues with Thompson until the colleagues filed written statements against each other.  Exhibit 3 at pp. 2-4

---

[11]In Plaintiff's answers to Defendant State of North Carolina's first set of interrogatories, Plaintiff claimed that when she was transferred to the Catawba Correctional Institution she was demoted from her position as a Transportation Officer to a position in a housing unit, which had a different work schedule, less opportunities for overtime, and mandatory weekend and holiday shifts.  (Doc. 34-2 at p. 4).

23

This court, therefore, dismisses Plaintiff's § 1981a punitive damages claims pursuant to Rule 12(b)(6).

Plaintiff also seeks to recover punitive damages pursuant to N.C. Gen. Stat. § 1D-15. The statute, however, states that punitive damages my be awarded "only if the claimant proves that the defendant is liable for compensatory damages." N.C. Gen. Stat. § 1D-15(a). As the statute provides no independent cause of action for punitive damages, the court need not consider Plaintiff's claims at this juncture. *See Collier v. Bryant*, 719 S.E.2d 70, 82 (N.C. App. 2011).

## ORDER

**IT IS ORDERED** that:

Defendant State of North Carolina's Motion for Partial Dismissal of Plaintiff's claims and Defendant Keith Whitener's Motion to Dismiss Plaintiff's claims are GRANTED.

**SO ORDERED.**

Signed: October 17, 2012

Richard L. Voorhees
United States District Judge